IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **4:16-CR-101** |
| v. | : | **(JUDGE MARIANI)** |
| | : | |
| DEMETRIUS CATCHING, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION

### I.    INTRODUCTION AND PROCEDURAL HISTORY

On April 19, 2016, a federal grand jury indicted Demetrius Catching for knowingly

and intentionally forcibly assaulting, resisting, opposing, impeding, intimidating, and

interfering with certain officers (Counts 1 and 2), in violation of 18 U.S.C. § 111(a).  (Doc. 1).

A signed Plea Agreement was filed on August 1, 2018, wherein Defendant agreed to

plead guilty to Count 1 of the Indictment (violation of 18 U.S.C. § 111(a), assaulting,

resisting, or impeding correctional officer B.B.) (Doc. 67).  On April 2, 2019, Defendant

appeared before this Court via videoconference and entered a plea of guilty to Count 1.  A

Final Presentence Report ("PSR") was filed on November 7, 2019 (Doc. 83) and a Second

Addendum was filed on September 28, 2022 (Doc. 95).[1]

Following a number of delays, sentencing was last scheduled to commence on July

16, 2024 (Doc. 117).  However, on June 27, 2024, Defendant filed a "Petition to Withdraw

---

[1] The Second Addendum had no impact on the sentencing guidelines, which remained at 33-41 months (total offense level of 13 and criminal history category of VI).

Plea" (Doc. 118) and subsequently filed a supporting brief (Doc. 119).  The Government

filed a responsive brief opposing Defendant's motion (Doc. 123).  As a result of Defendant's

motion, sentencing was continued generally pending disposition of the pending motion (*see*

Doc. 120).

On August 21, 2024, this Court held an evidentiary hearing and oral argument on

Defendant's motion to withdraw his plea of guilty.  At the hearing, Defendant testified in

support of his motion.  The Government presented no testimony.

For the reasons set forth herein, Defendant's "Petition to Withdraw Plea" (Doc. 118)

will be denied.

## II.  BACKGROUND

The testimony of Demetrius Catching at the evidentiary hearing of August 21, 2024,

in conjunction with the exhibits admitted at the hearing, and documents filed of record in this

action and in the District Court for the Eastern District of Kentucky, provide the basis for the

relevant factual background of Defendant's motion.

On August 1, 2018, a Plea Agreement, signed by Defendant Catching, his counsel

Toni Byrd, and AUSA Robert O'Hara, was filed of record.  (Doc. 67 (Plea Agreement); *see*

*also*, Aug. 21, 2024, Hr'g Ex. D1).  Defendant agreed therein to plead guilty to Count 1 of

the Indictment (violation of 18 U.S.C. § 111(a), assaulting, resisting, or impeding

correctional officer B.B.).  (Doc. 67, at 1).  At the time that the Plea Agreement was signed,

Defendant was serving a 60-month sentence of incarceration imposed in the Eastern

District of Kentucky for a violation of supervised release.  (*See* 5:11-cr-109-DCR-1 (E.D.

Ky.), Doc. 68).

In relevant part, the signed Plea Agreement in this action includes the following

provisions:

> Specific Sentencing Recommendation: At the time of sentencing, the parties agree to recommend as follows: The parties will jointly recommend to the Court that the Court impose a sentence within the applicable guideline range as determined by the Court. The defendant reserves the right to ask for a sentence at the bottom of the applicable guideline range. The government reserves the right to seek a sentence up to the top of the applicable guideline range. The parties will jointly recommend that the sentence imposed in this case run concurrent with the 60-month sentence which was imposed upon upon [*sic*] the defendant for his supervised release violation in the Eastern District of Kentucky in case number 5:11-CR-109-DCR-1. The defendant understands that this recommendation is not binding upon either the court or the United States Probation Office, which may make different findings as to the application of the Sentencing Guidelines to the defendant's conduct. The defendant further understands that the United States will provide the court and the United States Probation Office all information in its possession that it deems relevant to the application of the Sentencing Guidelines to the defendant's conduct.

(Doc. 67, ¶ 11).

> Court Not Bound by Terms. The defendant understands that the court is not a party to and is not bound by this Agreement, or any recommendations made by the parties.  Thus, the court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 8 years. . . .

(*Id.* at ¶ 20).  Section G of the Plea Agreement states:

> 22. Breach of Agreement. In the event the United States believes the defendant has failed to fulfill any obligations under this Agreement, then the United States shall, in its discretion, have the option of petitioning the court to be relieved of its obligations. Whether the defendant has completely fulfilled all of the obligations under this Agreement shall be determined by the court in an

appropriate proceeding during which any disclosures and documents provided by the defendant shall be admissible, and during which the United States shall be required to establish any breach by a preponderance of the evidence. In order to establish any breach by the defendant, the United States is entitled to rely on statements and evidence given by the defendant during the cooperation phase of this Agreement, if any.

23. <u>Remedies for Breach</u>. The defendant and the United States agree that in the event the court concludes that the defendant has breached the Agreement:

a. The defendant will not be permitted to withdraw any guilty plea tendered under this Agreement and agrees not to petition for withdrawal of any guilty plea;

b. The United States will be free to make any recommendations to the court regarding sentencing in this case;

c. Any evidence or statements made by the defendant during the cooperation phase of this Agreement, if any, will be admissible at any trials or sentencings;

d. The United States will be free to bring any other charges it has against the defendant, including any charges originally brought against the defendant or which may have been under investigation at the time of the plea. The defendant waives and hereby agrees not to raise any defense to the reinstatement of these charges based upon collateral estoppel, Double Jeopardy, or other similar grounds.

24. <u>Violation of Law While Plea or Sentence Pending</u>. The defendant understands that it is a condition of this Plea Agreement that the defendant refrain from any further violations of state, local, or federal law while awaiting plea and sentencing under this Agreement. The defendant acknowledges and agrees that if the government receives information that the defendant has committed new crimes while awaiting plea or sentencing in this case, the government may petition the court and, if the court finds by a preponderance of the evidence that the defendant has committed any other criminal offense while awaiting plea or sentencing, the Government shall be free at its sole election to either: (a) withdraw from this Agreement; or (b) make any sentencing recommendations to the court that it deems appropriate. The defendant further understands and agrees that, if the court finds that the defendant has committed any other offense while awaiting plea or sentencing, the defendant will not be permitted to withdraw any guilty pleas tendered pursuant to this Plea Agreement, and the government will be permitted to bring any additional charges that it may have against the defendant.

(Doc. 67, § G (¶¶ 22-24)).  The Plea Agreement further contains a Conditional Appeal Waiver, wherein Defendant retains the right to appeal his sentence and conviction "[i]f the Court imposes a sentence of imprisonment that is not concurrent with the 60-month supervised release violation sentence which was imposed in the Eastern District of Kentucky in case number 5:11-CR-109-DCR-1. . ."  (Doc. 67, ¶ 26).

Following the filing of the Plea Agreement, Defendant Catching and his counsel signed a Waiver of Rights and Consent to Proceed Via Video Conference (Doc. 70), filed of record on August 24, 2018.[2]

On April 2, 2019, Defendant appeared before this Court via videoconference and entered a plea of guilty to Count 1 of the Indictment.  At the change of plea hearing, Defendant was represented by Attorney Gerald Lord due to Attorney Byrd's retirement from the Office of the Federal Public Defender.  The Court engaged in an extensive colloquy with Defendant to ensure Catching understood the terms of his Plea Agreement, as well as "that [Defendant was] competent to plead at this time, that [Defendant] . . . had the assistance of counsel, that [Defendant] underst[ood his] trial rights, that [Defendant] underst[ood] the nature of the charges against [him] and that there [was] a factual basis to support [Defendant's] plea."  (Doc. 82 (Change of Plea Hr'g Tr., April 2, 2019); *see also*, Aug. 21,

---

[2] On August 2, 2018, the Court held a conference call with counsel for the Defendant and the Government.  At the request of Defendant's counsel, and without objection by the Government, the Court agreed to schedule a change of plea hearing to occur by videoconference due to Defendant's 60-month sentence of incarceration for a supervised release violation in Kentucky.  Defendant's counsel filed the signed Waiver of Rights and Consent to Proceed Via Video Conference three weeks later.

2024, Hr'g Ex. G3).

Prior to engaging in the change of plea colloquy, the Court first referenced the Waiver of Rights and Consent to Proceed Via Video Conference and confirmed with Defendant that it was his signature on that document.  (Change of Plea Hr'g Tr., April 2, 2019, at 2).  The Court thereafter placed Defendant Catching under oath after explaining that "once you're sworn, you need to answer my questions truthfully.  False answers to my questions could subject you to perjury prosecution or false statement prosecution."  (*Id*. at 3).

After confirming that Catching signed the final page of the Plea Agreement, had previously read the Plea Agreement, discussed it with his counsel, and that his questions, if any, were answered by his counsel to his satisfaction prior to the hearing, the Court instructed counsel for the Government "to summarize the essential terms of the plea agreement" in order to "make sure that the plea agreement is understood by [Defendant] and the Government in the same way."  (Change of Plea Hr'g Tr., April 2, 2019, at 11-12). The Government reiterated a number of the paragraphs set forth in the Plea Agreement, and set forth *supra* in this memorandum opinion, including: (1) that the parties would jointly recommend that the sentence in the present case would run concurrent with the 60-month sentence in the Eastern District of Kentucky (citing to ¶ 11); (2) that this recommendation was not binding on the Court or the U.S. Probation Office (citing to ¶ 11); (3) that the Court was not bound by the terms of the Plea Agreement or any recommendations by the parties (citing to ¶ 20); and that the Plea Agreement contained a conditional appeal waiver (citing to

¶ 26).  (Change of Plea Hr'g Tr., April 2, 2019, at 13-15).  Upon questioning by the Court,

Defendant Catching confirmed that the terms of the Plea Agreement, as outlined by the

Government, were the terms as he understood them.  (*Id*. at 16).

The Court thereafter again confirmed that Catching understood that it was not bound

by the parties' recommendations and that it may impose a sentence different than what

Defendant may expect:

> THE COURT: . . . Mr. Catching, Mr. O'Hara outlined a number of recommendations that might be made that would pertain to a reduction in your offense level under the Sentencing Guidelines. Those recommendations are in Paragraph 10 regarding Acceptance of Responsibility, where the Government will recommend either a two or three-level reduction in your offense level, if you show acceptance of responsibility.
>
> Then, of course, there's the matter we just spoke about that you find in Paragraph 11 regarding the sentence to be imposed in this case to run concurrent with the sentence you're currently serving on a supervised release violation.
>
> Do you understand that if I do not accept those recommendations that pertain to a reduction in your offense level and, thereby, a reduction in your term of imprisonment, you're still going to be bound by your plea, and you will not have the right to withdraw your plea on the ground that I did not accept those recommendations. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you also understand that if the sentence is different than what you expected, if it's more severe than you expected, you'll still be bound by your plea, and you will not have the right to withdraw your plea on that ground. Do you understand that?
>
> THE DEFENDANT: Yes.

(Change of Plea Hr'g Tr., April 2, 2019, at 18-19).

With respect to the Defendant's conditional appeal waiver, the Court engaged in the

following exchange with Defendant and counsel:

> THE COURT: I'm saying that, yes, if I impose a sentence, in accordance with the recommendation that's been made to me for a sentence that runs concurrent with the 60-month supervised release sentence that you're serving right now, you would have no appeal right. Do you understand that?
>
> If I impose a sentence that's not concurrent with your 60-month supervised release sentence that you're serving right now, then, you would still have the right to appeal. Do you understand?
>
> THE DEFENDANT: Yes. So if you impose a sentence that is not concurrent with the time that I'm serving now, I do have the ability to appeal it; correct?
>
> THE COURT: That is correct. Did I hear Mr. Catching correctly? I believe I did. And the answer is, he would retain his right to appeal in that circumstance?
>
> MR. O'HARA: Yes, Your Honor, that is correct.
>
> MR. LORD: That is correct, Your Honor.
>
> THE COURT: Are you all right then, Mr. Catching?
>
> THE DEFENDANT: Yes, sir.

(*Id*. at 21-22).

Defendant having informed the Court that he understood the terms of the Plea

Agreement, the Court requested that the Government set forth the factual basis for

Defendant's plea of guilty, and inquired whether Defendant agreed with the evidence set

forth by the Government and whether Defendant's plea was voluntary:

> THE COURT: Okay. All right, Mr. Catching, we're going to go to the section of this proceeding where I ask the Government to summarize what the evidence would be against you, if this case went to trial. The purpose of this is to establish

that there is a factual basis for your plea.

So, once again, I'm going to turn to Mr. O'Hara, I'm going to ask him to summarize what the evidence would be against you, if this case were to go to trial. I'll ask you to listen carefully to what he says, because once he's concluded, I'll ask you if his statement is true and correct, whether you disagree with any part of his statement, and whether you agree the Government could prove those facts beyond a reasonable doubt.

Are you ready?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. O'Hara.

MR. O'HARA: Yes, sir. On or about March 7 of 2016, the Defendant Mr. Catching was an inmate at FCI Allenwood, which is located here in the Middle District of Pennsylvania. On March 7, 2016 at approximately 9:45 a.m., while working in Unit 2-B at FCI Allenwood, Senior Officer Specialist Bauer, a correctional officer, was escorting Inmate Catching to the Sally port area, in order to conduct a routine pat-down search.

Officer Bauer observed that Inmate Catching had something in his right hand. To make a long story short, Your Honor, a scuffle then ensued between the Defendant Mr. Catching and Officer Bauer. Both individuals went down to the floor, and during the scuffle, Officer Bauer was struck.

The evidence would show that the Defendant knowingly and intentionally committed acts which resisted or opposed or assaulted or impeded or intimidated Officer Bauer, and that those acts resulted in physical contact with the officer, which is a necessary element of the statute.

Officer Bauer did sustain some abrasions, some scratches and some friction burns in the scuffle. The statute, Your Honor, is written, Violation of 18 United States Code Section 111(a), is written in the disjunctive, so that if the jury found that Mr. Catching committed acts which either resisted or opposed or impeded or assaulted or intimidating Officer Bauer, the jury would have sufficient facts to make a finding of guilty on that charge.

THE COURT: Thank you, Mr. O'Hara. Mr. Catching, did you hear Mr. O'Hara

outline what the evidence would be against you if this case went to trial?

THE DEFENDANT: Yes, sir.

THE COURT: Is his statement true and correct?

THE DEFENDANT: Yes.

THE COURT: Do you agree the Government could prove those facts beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Catching, has anyone forced you, in any way, to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Have you been threatened, in any way, that induced you to plead guilty?

THE DEFENDANT: No, sir.

(*Id.* at 22-24).

Having confirmed that Defendant understood, and agreed to, the terms of the Plea Agreement and the factual basis for the charge to which he was pleading guilty, the Court asked for Defendant Catching's plea to Count 1 of the Indictment:

THE COURT: All right, Mr. Catching, I'm going to ask you for your plea in this case, specifically, I ask you for your plea to the indictment filed against you on April 19, 2016, charging that, on or about March 7, 2016 at the Federal Correctional Institute at Allenwood, Pennsylvania, within the Middle District of Pennsylvania, that you, Demetrius Catching, did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate and interfere with a correctional officer, whose initials are B.B., who was employed by United States Bureau of Prisons, while he was engaged in the performance of his official duties, with such acts of the Defendant, Demetrius Catching, involving physical

contact with the correctional officer victim, in violation of Title 18 United States Code Section 111(a), what is your plea, Mr. Catching?

THE DEFENDANT: Guilty.

THE COURT: Mr. Catching, it's my finding, first, that you are fully competent and capable of entering an informed plea in this case, it's also my finding that your plea of guilty is a knowing and voluntary plea, that it's supported by an independent basis in fact containing each of the essential elements of Count 1 of the indictment filed against you, specifically, that you did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate and interfere with a correctional officer employed by United States Bureau of Prisons, initials B.B., while he was engaged in the performance of his official duties, by acts involving physical contact with that correctional officer, in violation of Title 18 United States Code Section 111.

So Mr. Catching, since you acknowledge that you are, in fact, guilty as charged, that you have had the assistance of counsel, that you know your right to a trial and what rights you would have at trial, and you know what the maximum possible punishment in this case is, and you are voluntarily pleading guilty, I will accept your plea of guilty and enter a judgment of guilty on that plea.

(Change of Plea Hr'g Tr., April 2, 2019, at 25-27).

Five months later, by Opinion dated September 3, 2019, the United States Court of Appeals for the Sixth Circuit vacated the sentence of 60-months' imprisonment and revocation of supervised release imposed by the District Court of Eastern Kentucky in 5:11-cr-109-DCR-1 and ordered that Catching's term of supervised release be reinstated. *See United States v. Catching*, 786 F.App'x 535 (6th Cir. 2019).

On November 11, 2019, the United States Probation Office for the Middle District of Pennsylvania filed the Final Presentence Investigation Report ("PSR") (Doc. 83) in this case. The PSR correctly stated that Catching's 60-month supervised release violation

sentence had been vacated by the Sixth Circuit. (Doc. 83, at 1; *id*. at ¶ 7). In addressing the impact of this decision on the Plea Agreement, the PSR recognized that "[t]he parties have agreed to recommend that the sentence be imposed to run concurrently to the 60-month term imposed in the Eastern District of Kentucky. That condition of the plea agreement appears to be void since the term imposed in Kentucky was vacated." (*Id*. at ¶ 58). Although the Addendum to the PSR (Doc. 84) reflects that Defendant filed several objections to the PSR, none of Defendant's objections addressed the effect of Defendant's 60-month sentence having been vacated or the PSR's conclusion that the parties' agreement that the sentence in this case be run concurrent to the 60-month sentence "appears to be void."

In 2021, while on supervised release in the Eastern District of Kentucky and awaiting sentencing in the present case, Defendant Catching was again arrested in Kentucky and charged with a number of criminal offenses relating to drug distribution and money laundering. (*See* 5:21-cr-46-DCR-1 (E.D. Ky.)). Catching pleaded guilty to Distribution of less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 1 of the Third Superseding Indictment) and Conspiracy to Commit Money Laundering Offenses, in violation of 18 U.S.C. § 1956(h) (Count 3 of the Third Superseding Indictment). On July 25, 2022, the District Court sentenced Catching as follows:

> Ninety-Three Months (93) Months on each of Counts 1SSS and 3SSS, to be served concurrently to each other, for a total terms of NINETY-THREE (93) MONTHS

This sentence shall run consecutively to the sentence imposed in U.S. District Court, Eastern District of Kentucky, Case No. 5:11-CR-109-S-DCR-01

This sentence shall run consecutively to any penalties imposed in U.S. District Court, Middle District of Pennsylvania, Case No. 4:16-CR-00101.

(Aug. 21, 2024, Hr'g Ex. G1; 5:21-cr-46-DCR-1 (E.D. Ky.), Doc. 100).  That same day, the

District Court also sentenced Catching as follows for violations of his supervised release in

criminal action 5:11-cr-109-DCR-1 (E.D.Ky.):

FIFTY-FIVE (55) MONTHS

This sentence shall run consecutively to the sentence imposed in U.S. District Court, Eastern District of Kentucky, Case No. 5:21-CR-046-SSS-DCR-01.

This sentence shall run consecutively to any penalties imposed in U.S. District Court, Middle District of Pennsylvania, Case No. 4:16-CR-00101.

(Aug. 21, 2024, Hr'g Ex. G2; 5:11-cr-109-DCR-1 (E.D. Ky.), Doc. 123).

At the sentencing of Defendant Catching for the new criminal offenses set forth in

5:21-cr-46-DCR-1 and for the Supervised Release Violation in 5:11-cr-109-DCR-1, the

District Court for the Eastern District of Kentucky reasoned:

But th[is] Court will also indicate in the judgment that the sentences for these two cases here in Kentucky will be consecutive to any additional penalty that may be imposed in the Middle District of Pennsylvania; the docket number is 4-16-CR-101.

Of course, it will be up to that Court to make the final determinations as to the penalty in that case based on conduct wholly separate and distinct than the conduct in this particular matter. To impose a lesser sentence in either of these two matters would unduly depreciate the offenses.

(5:21-cr-46-DCR-1 (E.D. Ky.), Doc. 117, at 36).  When subsequently asked if any party had

any objections to the Court's sentences as to the two cases, counsel for the Defendant and

Government each stated there were no objections.  (*Id*. at 41-42).

Sentencing in the above-captioned case was then scheduled to be held on March

13, 2023 (Doc. 97).  However, as explained in this Court's Order of March 14, 2023:

> On Monday, March 13, 2023, prior to the hearing to be held in this matter to determine the appropriate sentence for the defendant, the defendant requested that his current counsel, Gerald A. Lord, be replaced.  After the Court spoke to the defendant and Mr. Lord, a private conference was held between the defendant and his counsel.  At the conclusion of the conference, and after defense counsel had an opportunity to speak with Government counsel, the parties requested that the sentencing hearing be postponed for 90 days during which time Mr. Lord would remain as defendant's counsel and would confer with Government counsel, Robert O'Hara, for the purpose of reaching an agreement to be presented to the Court for disposition of this matter.

(Doc. 99).  On September 18, 2023, Attorney Lord informed the Court that the parties were

unable to reach a joint recommendation as to the disposition of this case and informed the

Court that Catching continued to request that new counsel be appointed on his behalf.

(Doc. 108).  Following the issuance of an Order by this Court directing Defendant Catching

to confirm his request for a new attorney and the basis therefor (Doc. 109), Attorney Paul

Walker entered his appearance on behalf of the defendant (Doc. 110).

The Court thereafter scheduled sentencing to be held on March 27, 2024 (Doc. 111),

which was continued to July 16, 2024, at the request of Defendant's counsel (Docs. 116,

117).  Defendant's motion for a continuance set forth several bases for this request,

including that "[s]ince the plea [of guilty] was predicated on a concurrent sentence on a case

which was overturned, the Defendant is contemplating filing a petition to withdraw his guilty plea." (Doc. 114, ¶ 3).

On June 27, 2024, Defendant filed a "Petition to Withdraw Plea". (Doc. 118). As a result, the Court continued Defendant's sentencing generally pending disposition of Defendant's motion and scheduled a hearing on Defendant's motion to be held on August 21, 2024. (Doc. 120).

Defendant Catching was the only witness who testified at the August 21, 2024, hearing.

During the hearing, Defendant testified that at the time of his guilty plea colloquy, he was in a county jail in Kentucky. (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 8, 13). When asked by his counsel if he was comfortable doing the change of plea by video conference, Defendant responded in the negative. (*Id.* at 15). However, Defendant admitted that he did sign the waiver agreeing to conduct the colloquy via video conference. (*Id.*; *see also, id.* at 22-23 (Defendant agreeing that he reviewed and signed the waiver). Defendant further admitted that, at the time of the change of plea hearing, he did not express any concerns to this Court about proceeding by video conference. (*Id.* at 31).

Defendant testified that his prior counsel, Toni Byrd, explained that if his supervised release sentence in Kentucky was "overturned", then "this case would also get overturned." (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 5, 7-8). Defendant nonetheless acknowledged that his belief that he would not be bound by the plea agreement in this case

if the supervised release violation sentence was "overturned" was not reflected anywhere in the plea agreement and that he never previously stated this belief to this Court during his change of plea colloquy. (*Id*. at 7-8). Defendant further testified that he understood that he had the right to appeal the sentence in this Court if "for whatever reason" the sentence did not run concurrent to the 60-month sentence for the supervised release violation imposed in the Eastern District of Kentucky. (*Id*. at 7, 8-9).

On cross-examination, Catching acknowledged the text of Paragraph 24 of the Plea Agreement ("Violation of Law While Plea or Sentence Pending"). (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 26). Defendant admitted that he was released in the above-captioned action, pending sentencing, and thereafter was arrested in Kentucky again, referring to the criminal offenses for which he ultimately pleaded guilty to distribution of less than 50 kilograms of marijuana and Conspiracy to Commit Money Laundering Offenses (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 26-27). As summarized during an exchange between AUSA O'Hara and Defendant Catching:

> MR. O'HARA: We can agree that you got charged with new federal charges in Kentucky?
>
> THE DEFENDANT: Yes, sir.
>
> MR. O'HARA: After this incident of 2016 and after you signed the plea agreement in 2018 and after you entered your plea agreement in 2019, correct?
>
> THE DEFENDANT: Correct.

MR. O'HARA: And the provision in that plea agreement says, you will not be permitted to withdraw any guilty plea if you get arrested on new charges, correct? We just read that.

THE DEFENDANT: Correct.

(Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 27).

At the hearing, Catching also testified that his first attorney "told me that I would be eligible for programs and time off with programs" but that when he attempted to sign up for those programs, he was told that he was not eligible "because [he] had this charge". (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 11). Defendant stated that the programs for which he wanted to enroll were "RDAP" and "anything" else. (*Id.* at 11-12). According to Catching, he also informed his second attorney, Gerald Lord, that he was concerned about being able to participate in these programs. (*Id.* at 14-15). At the time of the August 21, 2024, hearing, Catching stated his belief that because of the charges in the instant case, specifically knowingly and intentionally forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with certain officers, he is not eligible for "time off for the RDAP Program, time off for the First Step Program and . . . extra time in the halfway house." (*Id.* at 18-19). Nonetheless, Catching admitted on cross-examination that his Plea Agreement does not reference any RDAP program or any other programs for which he may or may not be eligible. (*Id.* at 28, 36).

Defendant Catching further testified that he informed his first and second defense attorneys that he was innocent. (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 14-15).

According to the Defendant, he took the plea agreement, despite his asserted innocence,

because:

> The attorney and the investigator, I guess John Brunza, said that, you know, if I was to go to trial, you know, they was making me aware that I was going to be going to trial in Central Pennsylvania, and they said it was predominantly white, and that I would have a predominantly white jury, and they wasn't -- they didn't comfortable that I would, even though they felt like I was innocent, that I would win in a trial being black and with dreadlocks and, you know, things of that nature.
>
> They said that, you know, that the deal was, you know, basically, you know, it ran concurrent, that, you know, with my record, it would just be -- I mean, I already had a lot of felonies -- it would just basically be another felony and that I wasn't at risk of doing any extra time, what I would be risking if I was to go to trial and basically what I was up against.

(*Id.* at 16-17). (*See also*, *id*. at 17 (explaining that ". . . I was getting told a bunch of different

things, but, I mean, I ultimately expressed to them that, you know, I never did none of this

charge, not anything like that, so, you know, that's why I didn't want to sign the plea, but I

guess I signed the plea, you know, so.").

In reviewing the PSR in this case on cross-examination, Catching admitted that he

had at least 6 prior adult criminal convictions, in addition to his newest conviction in the

District Court of the Eastern District of Kentucky and, as a result, has previously pleaded

guilty on many occasions.  (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 28-30, 37).

### III.  ANALYSIS

Here, Defendant Catching asks this Court for the first time, five-and-a-half years after

pleading guilty in open court, and five years after the Sixth Circuit vacated his 60-month

sentence for a violation of his supervised release, to allow him to withdraw his plea of guilty. Defendant's motion to withdraw his guilty plea sets forth three bases in support of his motion:

1.  His guilty plea was premised on a concurrent sentence to a sentence that has since been reversed on appeal;

2.  He is not guilty of the offense;

3.  It was inappropriate to conduct a Change of Plea hearing via a video conference.

(Doc. 118, ¶¶ 15-17).

Federal Rule of Criminal Procedure 11(d)(2)(B) allows a defendant to withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if: . . the defendant can show a fair and just reason for requesting the withdrawal." "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Hyde,* 520 U.S. 670, 676-677 (1997); *United States v. Isaac,* 141 F.3d 477, 485 (3d Cir. 1998)).

As recently summarized by the Third Circuit:

To permit a defendant to withdraw his guilty plea, the defendant must "show a fair and just reason for requesting the withdrawal." [Fed. R. Crim. P. 11(d)(2)(B)]. Factors that a district court may consider include whether the defendant is asserting his innocence, the strength of the defendant's reasons for withdrawing his plea, and whether the government would suffer prejudice because of the withdrawn plea. [*See United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)]. "Bald assertions of innocence ... are insufficient to permit a defendant to withdraw [his] guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense." [*United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001) (cleaned up)]. Additionally,

> a defendant seeking to withdraw his guilty plea must "give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea." [*United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded on other grounds by United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999)].

*United States v. Kwasnik*, 55 F.4th 212, 216-217 (3d Cir. 2022). *See also*, *United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023) (re-iterating the three-factor test). Furthermore, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252 (internal citations and quotation marks omitted). Finally, the third factor that a Court should evaluate when determining whether to permit a defendant to withdraw his guilty plea – whether the government would suffer prejudice – need not be shown by the Government "when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255; *see also*, *Rivera*, 62 F.4th at 788.

The first factor that must be considered in determining whether Catching has provided a "fair and just reason" warranting the withdrawal of his guilty plea is his assertion of innocence. Here, Defendant has not supported his assertions of innocence with sufficient facts "in the record that support a claimed defense", *see Brown*, 250 F.3d at 818, nor has he set forth sufficient reasons to explain the contradictory position he has now taken.

At the change of plea hearing, the nature of the offense to which Catching had agreed to plead guilty, and its elements, were outlined for Catching, and the Government

20

set forth the factual basis for this charge and the evidence which it would present at trial.

Catching acknowledged that he had listened to the outline of the evidence that would be

presented against him, that the Government's statements were "true and correct", and

agreed that the Government could prove those facts beyond a reasonable doubt (*see*

Change of Plea Hr'g Tr., April 2, 2019, at 22-24).  Catching thereafter pleaded guilty to

Count 1 of the Indictment.  At no time during the change of plea hearing did Catching make

any statements asserting or implying that he was innocent of the crime to which he was

pleading guilty, that he had doubts as to the Government's evidence against him, or that he

was confused as to any part of the Government's recitation of the factual basis for his plea.

Catching now asserts that he is innocent, without adequate explanation for this

inconsistent position.  Catching attempted to explain this inconsistency at the August 21,

2024 hearing by asserting that he was told by his counsel and the investigator in the

Federal Defender's Office that, at trial, they did not believe that he would be found innocent

because he was "black and with dreadlocks".  (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at

16).  This description of his counsel and investigator's statements, even if accepted as true,

does not suggest that Catching may be innocent, but instead is merely a speculative

statement of what difficulties Catching may face at trial.[3]

---

[3] Defendant's unsupported testimony also does not provide a basis for permitting him to withdraw his guilty plea pursuant to the second factor which a court must consider (strength of the defendant's reasons for withdrawing his plea). *See United States v. James*, 928 F.3d 247, 257 (3d Cir. 2019) (rejecting Defendant's argument that he pleaded guilty because his attorney told him that "the judge system in St. Thomas is corrupt and the judge and jury would not believe his defense" where Defendant offered no evidence of corruption or reason for believing this assertion and where the Court conducted "lengthy and

Catching's further explanation that he pleaded guilty because he believed his sentence would run concurrent with the 60-month term of incarceration for his now vacated supervised release violation, and therefore "it would just basically be another felony and that [he] wasn't at risk of doing any extra time, what [he] would be risking if [he] was to go to trial and basically what [he] was up against" (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 16-17) is equally unpersuasive.  At the change of plea hearing, Defendant admitted under oath that he had read and reviewed the terms of his Plea Agreement, had discussed the Plea Agreement with counsel, and that his questions had been answered by his counsel to his satisfaction.  This Court also reviewed the terms of the Plea Agreement with Defendant to ensure his understanding of the agreement he had entered into.  This colloquy with the Court included confirming that Defendant fully understood that the Court was not bound by the parties' recommendation that his sentence in this case run concurrent to the 60-month sentence.  As addressed by the Court:

> THE COURT: . . . Then, of course, there's the matter we just spoke about that you find in Paragraph 11 regarding the sentence to be imposed in this case to run concurrent with the sentence you're currently serving on a supervised release violation.
>
> Do you understand that if I do not accept those recommendations that pertain to a reduction in your offense level and, thereby, a reduction in your term of imprisonment, you're still going to be bound by your plea, and you will not have the right to withdraw your plea on the ground that I did not accept those recommendations. Do you understand that?

---

extensive colloquy", including inquiring whether anyone had made threats or promises or other assurances to convince him to plead guilty).

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that if the sentence is different than what you expected, if it's more severe than you expected, you'll still be bound by your plea, and you will not have the right to withdraw your plea on that ground. Do you understand that?

THE DEFENDANT: Yes.

(Change of Plea Hr'g Tr., April 2, 2019, at 18-19).  Despite the terms of the Plea Agreement making clear that the Court was not bound by the recommendation that the sentences run concurrent, and the Court's oral confirmation with Catching that he understood both that the Court did not have to run the sentences concurrently and that if the sentence was more severe than he expected, he would not have the right to withdraw his plea of guilty, Catching nonetheless pleaded guilty to Count 1.  Catching's testimony that, despite his innocence, he pleaded guilty because "[he] wasn't at risk of doing any extra time" is therefore entirely unsupported by the record.

For these reasons, the Court finds that the first factor to be considered – a defendant's assertion of innocence – provide no basis for withdrawal from his plea of guilty. *Cf. United States v. James*, 928 F.3d 247, 256-257 (3d Cir. 2019) ("James also takes a pass at what one might interpret as a claim of factual innocence. . . But, in all of this it must be remembered that James admitted under oath to the underlying facts of the offense during the plea colloquy and made no mention of inducement then.  His factual admissions 'carry a strong presumption of verity.' *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, given his earlier admissions, . . . there was no abuse of discretion in rejecting his late and

23

lame protestations of factual innocence. . . .").

The second factor to be considered – the strength of the defendant's reasons for withdrawing the plea – also does not provide a basis to grant Catching's request to withdraw his plea of guilty.  Defendant's claims rest on issues related to his potential sentence: specifically, the length of his sentence and whether he would be entitled to participate in certain "programs", including RDAP.

With respect to the length of Catching's potential sentence, Defendant admitted that he pleaded guilty because he believed his sentence would run concurrent to his then-sentence in Kentucky of 60-months' incarceration.  Defendant's desire to, in effect, not serve any additional time in prison does not allow him to now withdraw from the Plea Agreement.  Both the Plea Agreement and the change of plea colloquy made clear to the Defendant that the Court was not bound by any recommendation that the sentence in this case run concurrent to the 60-month supervised release violation sentence and that there was no guarantee that the sentences would, in fact, run concurrent.  Defendant was informed that his remedy, should the sentences not be concurrent, would lie in his ability to appeal the sentence of this Court, an issue he specifically inquired about with the Court (*see* Change of Plea Hr'g Tr., April 2, 2019, at 21-22), supporting a finding that he clearly appreciated the risk that this Court may not accept the parties' recommendation and that his sentence may not run concurrent to his 60-month sentence for violation of his supervised release.

Of note, Defendant's Plea Agreement also includes a provision which relieves the

Government of any obligation to recommend that the sentence imposed in the present case

run concurrent to the 60-month sentence in the Eastern District of Kentucky, even if that

sentence had not been vacated:

> 24. <u>Violation of Law While Plea or Sentence Pending</u>. The defendant understands that it is a condition of this Plea Agreement that the defendant refrain from any further violations of state, local, or federal law while awaiting plea and sentencing under this Agreement. The defendant acknowledges and agrees that if the government receives information that the defendant has committed new crimes while awaiting plea or sentencing in this case, the government may petition the court and, if the court finds by a preponderance of the evidence that the defendant has committed any other criminal offense while awaiting plea or sentencing, the Government shall be free at its sole election to either: (a) withdraw from this Agreement; or (b) make any sentencing recommendations to the court that it deems appropriate. The defendant further understands and agrees that, if the court finds that the defendant has committed any other offense while awaiting plea or sentencing, the defendant will not be permitted to withdraw any guilty pleas tendered pursuant to this Plea Agreement, and the government will be permitted to bring any additional charges that it may have against the defendant.

(Doc. 67, § G (¶¶ 22-24)).

Here, following Defendant signing the Plea Agreement and appearing before this

Court for a change of plea hearing, Defendant Catching violated federal law in Kentucky

while on pre-sentence release, an undisputable fact where Defendant pleaded guilty to the

new criminal activity in Kentucky and has been sentenced for his crimes. The Government

is therefore in a position where it could petition the Court to "make any sentencing

recommendations to the court that it deems appropriate", without the defendant being

permitted to withdraw from his plea agreement in this case. This would include relieving the

Government of any obligation to recommend that the present sentence run concurrent to a now vacated sentence.

Defendant's argument that his purported inability to participate in certain prison programs supports his request to withdraw from his plea of guilty is also entirely unsupported. Despite Catching's assertion that he is unable to participate in these programs, Defendant has not presented any credible testimony or other evidence to support this belief. When asked by his counsel how he reached the conclusion that he was ineligible for certain programs, including RDAP, Catching explained:

> . . . well, I applied for those programs and, you know, speaking to different attorneys and probation officers and, you know, I mean, I speak to maybe 10 of them that, you know, they gave me different answers, but the majority said I wouldn't be eligible.
>
> Also, when I applied for the program when I was in the prison system, like I kind of understand now that, you know, being, you know, going through the court system, you may get told one thing, but being in BOPs is a whole different thing.

(Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 20). Catching's response indicates that he has received contradictory opinions from various individuals, but offers no concrete evidence that he is ineligible for prisons programs, including RDAP. Nor did Defendant provide any documentary evidence to support his assertions that he is ineligible for RDAP. In addition, as previously noted, Catching admitted at the evidentiary hearing that his Plea Agreement does not reference any RDAP program or any other programs for which he may or may not be eligible (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 28, 36) and the issue of his ability to participate in RDAP or any other program was never raised at the change of

plea hearing.  Finally, the letter relied upon by Defendant at the evidentiary hearing, written by Attorney Byrd to Catching on August 24, 2018, specifically cautions Defendant that "[t]here is no automatic right to the time off for participation in the RDAP."  (Aug. 21, 2024, Hr'g Ex. D5).[4]

The record reflects that Defendant's reasons for wanting to withdraw his plea of guilty are premised on a fear of punishment and a dissatisfaction with the punishment he may receive, despite having been fully informed of the effects of entering into a Plea Agreement and entering a plea of guilty before this Court.  Such reasons are not adequate "to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty," *Jones*, 336 F.3d at 252.[5]

---

[4] It is of note that although this Court can recommend placement in RDAP, it is the Bureau of Prisons, and not this Court, that determines whether an inmate may participate in RDAP and the benefits that a defendant may receive for his participation.

[5] Although not dispositive to this Court's findings herein, the Court notes the belated timing of Defendant's assertions, which significantly weaken the believability of Defendant's current claims of innocence and his reasons for wanting to withdraw his plea.  Preliminarily, Defendant entered his plea of guilty before this Court five-and-a-half years ago.  Six months later, the Sixth Circuit vacated Defendant's 60-month sentence for violation of his supervised release.  Nonetheless, Defendant waited almost five years to move to withdraw from his plea on the basis that his 60-month sentence, referenced in the Plea Agreement, had been vacated.  In the over five years since the time of his guilty plea colloquy, Defendant also has never asserted his innocence in any filings with this Court prior to the filing of his current motion in June of 2024.

In addition, Defendant's third reason for requesting to withdraw his plea of guilty presents another belated and unsupported assertion.  Defendant claims that he should be permitted to withdraw his plea of guilty because "it was inappropriate to conduct a Change of Plea hearing via video conference" (Doc. 118, ¶ 17).  This statement, set forth in Defendant's motion, reflects the extent to which the issue was raised in both Defendant's motion and supporting brief.  Although at the August 21, 2024 hearing, Catching briefly testified that he was not "comfortable" doing the change of plea by video, Defendant did not elaborate on this statement.  Rather, Defendant admitted twice at the evidentiary hearing that he had signed the Waiver of Rights and Consent to Proceed Via Video Conference (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 15, 22-23), a fact which the Court had previously confirmed with the Defendant prior to beginning its colloquy at

Although the Defendant has failed to demonstrate establish either of the necessary factors to withdraw his guilty plea, and therefore the Court need not reach the third factor – whether the Government would suffer prejudice – the Court nonetheless briefly addresses this point. Here, Defendant was indicted in 2016, signed a Plea Agreement in 2018, and pleaded guilty before this Court in 2019. Despite multiple efforts to bring this case to a resolution by sentencing Catching, there have been numerous impediments to the Court's attempts to do so, largely due to Catching's criminal activities in Kentucky and, more recently in 2023, dissatisfaction with counsel. Defendant's most recent attempt to delay sentencing in this case by moving to withdraw his plea of guilty present significant prejudice to the Government. As noted by the Government:

> Many of the witnesses in this case were BOP personnel who may no longer be employed by that agency. The BOP is an agency in which employees frequently leave, transfer, or accept different positions. With the passage of time, witnesses' memories may fade or fail when attempting to recall events and previous statements. Some of those witnesses may be unavailable. Delay and the passage of time usually work in favor of the defense. Now, the government would be unduly burdened with the task of having to locate previous witnesses, some of whom may be unavailable, and again preparing those witnesses for trial.

(Doc. 123, at 20). The Court finds the Government's arguments to be persuasive and

---

the change of plea hearing on April 2, 2019. Defendant further admitted that, at the time of the change of plea hearing, he never expressed any concerns to this Court about proceeding by videoconference. (Test. of Catching, Hr'g Tr., Aug. 21, 2024, at 31). Defendant's current vague assertions of discomfort, raised more than five years after pleading guilty, appear to be disinguous and nothing more than another attempt to justify an unwarranted request to withdraw from a plea agreement with which he is no longer satisfied and to delay proceedings.

agrees that the Government would suffer significant prejudice if Defendant Catching was now permitted to withdraw his plea of guilty.

For these reasons, the Court finds that Defendant Catching has not established a "fair and just" reasons for withdrawal of his guilty plea and Defendant's motion will be denied.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant Catching's "Petition to Withdraw Plea" (Doc. 118) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge